UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST MEDINA, | ) Case No.: 1:12-cv-1158- JLT (PC) |
| Plaintiff, | ) ORDER REQUIRING PLAINTIFF TO NOTIFY THE COURT OF HIS WILLINGNESS TO |
| v. | ) PROCEED ON HIS COGNIZABLE CLAIMS OR FILE A SECOND AMENDED COMPLAINT |
| YOUNGBLOOD, et. al, | ) |
| Defendants. | ) (Doc. 5). |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Before this Court for screening is Plaintiff's First Amended Complaint.[1]

**I.      Screening Requirement**

The Court is required to screen any complaint filed by a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity" in order to identify any "cognizable claim." 28 U.S.C. § 1915A(a)-(b). The Court should dismiss the case if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or if the prisoner is "seek[ing] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B). A Court should dismiss a claim as frivolous only "when the facts alleged rise to the

---

[1] Plaintiff filed his initial Complaint on July 16, 2012. (Doc 1). Before the Complaint was screened, Plaintiff filed a First Amended Complaint. The FAC is virtually identical to the initial Complaint. (Doc. 5).

1

level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them" and not simply because the Court may believe the "plaintiff's allegations unlikely." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992). When determining whether a claim is malicious, the Court will analyze whether it was made in good faith. Kinney v. Plymouth Rock Squab Co., 236 U.S. 43, 46 (1915).

### II. Plaintiff's First Amended Complaint

Plaintiff's FAC alleges that Defendants, Chaplain M. Franey, and Inmate Services, denied him a religious kosher diet and that Defendant Franey denied him religious literature in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). (Doc. 5 at 35-37). He complains also that "there are no religious services for High Holy Days" though he fails to tie this failure to a named Defendant. (Doc. 5 at 17) Although Plaintiff names Sergeant M. Black of Inmate Services as a defendant, Plaintiff does not make any factual allegations directly against Defendant Black.

Plaintiff claims that he is not Jewish, but believes "in a set of Religious principles of the sect of Jews who believe in Y'shua." (Doc. 5 at 35-36). He claims he "disagrees with both Christians and Jews." (Doc. 5 at 36). Plaintiff states that he observes high holy days and only eats clean and "ritually clean foods." (Doc. 5 at 35).

Plaintiff states that he asked Franey for a religious kosher diet, but was told he needed to "understand Judaism more" before Inmate Services would grant his request. (Doc. 5 at 36). Plaintiff then asked for religious literature but was told by Franey that the jail could only supply religious books that were donated. (Doc. 5 at 36). Franey told him to ask family, friends, or other inmates for the books he wanted. (Doc. 5 at 36). Plaintiff claims he has no family or friends that can supply the books for him. (Doc. 5 at 37).

Plaintiff's request for a kosher diet was denied by Inmate Services. (Doc. 5 at 37-38). When Plaintiff asked "Inmate Services" why his request was denied, he was informed that it was denied because Franey had recommended it be denied. (Doc. 5 at 38).

Plaintiff filed a grievance regarding the denial of his request for a religious kosher diet. (Doc. 5 at 38). In response to his grievance, Plaintiff was informed that he was not receiving a religious

kosher diet because he was not receiving that type of diet at his prior institution. (Doc. 5 at 38-39). Plaintiff argues that his prior institutions did not provide religious kosher diets, therefore he ate religious meatless diets or vegetarian diets. (Doc. 5 at 39-40). Plaintiff claims that he is now "being forced to eat unclean foods." (Doc. 5 at 40).

**III.  § 1983 Claims**

Section 1983 of title 42 of the United States Code does not confer substantive rights; but instead provides "a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994). Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State… subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In order to state a claim pursuant to § 1983, a plaintiff must allege facts that support that (1) he was deprived of a right afforded to him by federal law, and (2) the deprivation was committed by someone acting under color of state law. West v. Atkins, 487 U.S. 42, 48-49 (1988); Williams v. Gorton, 529 F.2d 668, 670 (9th Cir. 1976). Additionally, a plaintiff is required to allege a specific injury suffered, as well as show a causal relationship between the defendant's conduct and the injury suffered by the plaintiff. *See* Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person deprives another of a federal right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made"). Section 1983 does not recognize respondeat superior liability. Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 691 (1978). Accordingly, a supervisor may not be held liable merely because a subordinate the plaintiff's constitutional. Id. "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Lastly, similar to any other complaint, conclusory allegations that lack supporting facts are insufficient to state a claim under § 1983. Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir. 1977).

///

**IV.     Interference with Plaintiff's relgion**

    **a.  42 U.S.C. § 2000cc**

The Religious Land Use and Institutionalized Persons Act (RLUIPA) states the following:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ..., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc–1. To state a claim for violation of RLUIPA, a plaintiff must demonstrate the defendants substantially burdened the exercise of his/her religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994–95 (9th Cir.2005). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id. Under RLUIPA, "religious exercise" is defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A); Greene v. Solano County Jail, 513 F.3d 982, 986 (9th Cir.2008). "In fact, RLUIPA 'bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion.' " Id. (quoting Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005)). The Ninth Circuit has noted that a burden is substantial under RLUIPA when the state "'denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.' Shakur v. Schriro, 514 F.3d 878 (9th Cir.2008). Additionally, "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'" Id. at 884.

Though RLUIPA prohibits the government from imposing a substantial burden on an inmate's exercise of his religion, it does not require the government to promote the religion. Mayweathers v. Newland, 314 F.3d 1062, 1068 (9th Cir. 2002)(" RLUIPA neither advances nor inhibits religion . . ." Thus, for example, there is no requirement that prison officials provide a spiritual counselor. Allen v. Toombs, 827 F.2d 563, 569 (9th Cir. 1987). Likewise, the prison has no obligation to pay for "devotional accessories." Cutter, 544 U.S. at 720 n. 8.

On the other hand, the prison has no obligation to provide an inmate religious or devotional materials. Cutter, 544 U.S. at 720; See Cruz v. Beto, 405 U.S. 319, 323 (1972). Prison officials may

1  not prohibit an inmate from receiving religious materials from friends, relatives or religious
2  organizations. Id. However, officials are not required to purchase the materials for the inmate. Id.;
3  Low v. McGinness, 2012 WL 537491 at *6 (E.D. Cal. Feb. 17, 2012) ("Defendants were not required
4  to provide plaintiff with a Holy Quran or any other devotional material . . .")

5  **b.   Free Exercise Clause**

6  The protection of the Free Exercise Clause of the First Amendment is triggered when prison
7  officials infringe upon the practice of an inmate's religion by preventing him from engaging in conduct
8  which he sincerely believes is consistent with his faith; to be upheld, the impinging rule or regulation
9  must be reasonably related to legitimate penological interests. Shakur v. Schriro, 514 F.3d 878, 884–
10 85 (9th Cir.2008).   In McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir.1987), the court held that
11 "[i]nmates ... have the right to be provided with food sufficient to sustain them in good health that
12 satisfies the dietary laws of their religion."

13 **c.   Analysis**

14 Plaintiff alleges he eats "only clean and ritually clean" food and that he is currently forced to
15 eat unclean food because he has not been granted a "religious kosher diet." Plaintiff's FAC states that
16 Franey and Inmate Services were aware he was requesting a meal that conformed to his religious
17 beliefs. (Doc 5 at 36-38). Plaintiff asserts he was deprived of his dietary needs by Inmate Services
18 based upon Franey's recommendation. Id. at 38.  The response to his grievance indicated that the diet
19 request was denied because he had not received a religious meal at the institution where he was held
20 prior to transfer to Kern. Id. at 15-16. However, Plaintiff denies this and alleges that he had received
21 either a "religious" meal or a vegetarian meal that comported with his religious needs at his prior sites
22 of incarceration. Id. at 16-17.

23 Plaintiff alleges that he has sought a kosher diet and describes his requests as seeking
24 "religious" meals. Thus, it appears Plaintiff is alleging he maintains a sincere belief that is "rooted in
25 religious belief" that supports the need for the kosher diet. Shakur, at 884-885. Therefore, he has
26 stated a claim against Defendant Franey.

27 On the other hand, prison officials have no obligation to provide him religious texts or to
28 provide him religious services. Cutter, 544 U.S. at 720; Cruz, 405 U.S. at 323 ("[T]he fact that the

Texas prison system offers no Buddhist services at this particular prison does not, under the circumstances pleaded in his complaint, demonstrate that his religious freedom is being impaired."); Low, 2012 WL 537491 at *6. Finally, there are no factual allegations that tie any claim to Defendant Black.

### V. Leave to Amend

In sum, Plaintiff's complaint states the following cognizable claims under RLUIPA and the Free Exercise Clause against Defendant Franey. Plaintiff's remaining allegations fail to state a cognizable claim.

Therefore, Plaintiff may proceed in one of two ways. Plaintiff may elect to serve his complaint and pursue only his First and Eighth Amendment claims against Defendant Franey. Otherwise Plaintiff may delay service and file an amended complaint, attempting to cure the deficiencies that have been identified by the Court in this order. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) ("A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quotation marks and citation omitted).

If Plaintiff elects to file an amended complaint, he is warned that he may not change the nature of this suit by adding new and unrelated claims. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). In addition, Plaintiff is advised that once he files an amended complaint, his original pleadings are superceded and no longer serve any function in the case. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Thus, the amended complaint must be entitled "Second Amended Complaint" and must "complete in itself without reference to the prior or superceded pleading.[2]" Local Rule 220.

### ORDER

Accordingly, it is **HEREBY ORDERED** that:

1. Plaintiff has stated a claim for violation of the Free Exercise Clause and RLUIPA against Defendant Franey for denial of a religious meal;

---

[2] If Plaintiff chooses to file a Second Amended Complaint, he **should not** attach his previously filed complaints to it.

6

2. Plaintiff's claims against Defendant Black for violation of the Free Exercise Clause and RLUIPA are **DISMISSED WITH LEAVE TO AMEND**;

3. The Clerk's Office shall send Plaintiff a civil rights complaint form;

4. Within 21 days from the date of service of this order, Plaintiff must either:

   a. File a Second Amended Complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court of his willingness to proceed on the cognizable claims;

**If Plaintiff fails to comply with this order, the action will be dismissed for failure to obey a court order.**

IT IS SO ORDERED.

Dated:   **January 14, 2013**              **/s/ Jennifer L. Thurston**
                                                              UNITED STATES MAGISTRATE JUDGE